The land to recover the possession of which this action of ejectment was brought belonged to Tamar Sanderlin, who devised it to her illegitimate daughter, Zelia Sanderlin, for life, and then to her children in fee. Zelia married Lemuel Sawyer, by whom she had one child, and then died, leaving her husband and child surviving. They are both dead. Besides Zelia, Tamar Sanderlin had one other child, Isaac Sanderlin, who was legitimate, and is dead. The lessors of the plaintiff are the brothers and sisters of Lemuel Sawyer, the father, and the defendant is the only child of Isaac Sanderlin. The child of Zelia died without issue.
The only question was, Who is the heir at law of the child Zelia Sanderlin? The presiding judge decided the plaintiffs were, and the defendants appealed.
This case was argued at a former term by
The child of Zelia Sanderlin was legitimate, and derived the land by devise from her grandmother. She is, therefore, in law a purchaser, and the propositus. If this was a case at common law there can be no doubt the plaintiff would be entitled to the inheritance. But descents in this State are regulated not by the common law, but by our own statutes, Rev. Stat., ch. 38. The defendant contends that under a proper construction of the 4th, 5th, and 10th rules the land in controversy belongs to her as the heir of the propositus. The 4th rule provides: "On failure of lineal descendants, and when the inheritance has been transmitted by descent from an ancestor, or has been derived by gift, devise, or settlement, from an ancestor, to whom the *Page 293 
person thus advanced would, in the event of such ancestor's death, have been the heir or one of the heirs, etc., the land shall descend to the next collateral relations of the person last seized who are of the blood of such ancestor." Under this rule the defendant can take nothing. She cannot avail herself of it for the reason that in no event could the child of Zelia Sanderlin have been the heir or one of the heirs of Tamar Sanderlin. The latter had two children, a son Isaac, born in lawful wedlock, and Zelia, who was illegitimate. Upon her death intestate, her real estate would have descended to Isaac, and Zelia, the daughter, would have taken nothing.Flintham v. Holder, 16 N.C. 347. The child Zelia could not have been an heir or one of the heirs of Tamar Sanderlin, and, therefore, the inheritance cannot descend to her next collateral relations on the part of her grandmother.
Nor do we think that under the 10th rule or canon the defendant's claim is rendered any better. She comes neither within its letter nor reason, certainly not within the former. The rule declares that "When any woman shall die intestate, leaving children commonly called illegitimate, and no children born in lawful wedlock, her real estate shall descend to such illegitimate children and their representatives in (409) the same manner as if they had been legitimate. And if any such illegitimate child shall die intestate without leaving any child or children, his or her real estate shall descend to his or her brothers and sisters born of the same mother, and their representatives." It is manifest the case before us presents no such state of facts as contemplated in this rule. The propositus here was not a mother, nor did she die leaving children, either legitimate or illegitimate. She herself was legitimate, and the inheritance is claimed by no brother or sister of hers, or by any one claiming to represent them, or any of them. Does the defendant come within the purview or reason of the rule we are considering? The general scope and meaning of the act, we are told in the case of Flintham, was to prevent escheats in cases where before they would take place, and, therefore, such a construction was to be put upon it as to carry out such intent — meaning such construction to be consistent with the act. In this we agree. Escheats are not favored by our system of laws. If thepropositus here had died without leaving any one who could succeed to the inheritance but collaterals on the part of the mother, the land would have escheated to the University. But, in our opinion, this case does not present the difficulty. The plaintiffs are the next collateral relations of the propositus on the side of her father, and under the 5th rule or canon are entitled to the inheritance. That rule is, "On the failure of lineal descendants, and when the inheritance has not been transmitted by descent or derived as aforesaid from an ancestor, or when, if so transmitted or derived, the blood of such ancestor is extinct, *Page 294 
the inheritance shall descend to the next collateral relations of the person last seized, whether of the paternal or maternal line," etc. The words "derived as aforesaid" refer to the provision in the preceding rule, and we have shown that the child of Zelia could not be one of the heirs of her grandmother Tamar, and we have also shown that the defendant does not come within the operation of the 10th rule; neither is (410) she entitled to share in the inheritance with the plaintiff under the 5th rule. We are told by the Court in Flintham v. Holder
that the common law altogether excluded bastards from the succession. "From an anxious wish to uphold the great social compact, matrimony, our Legislature (say the Court) has yielded something to natural affection, but not so much as to impair either to the parties or to the public the value of that important relation." With this view, the provisions in the 10th section were made. So far the Legislature has opened the door of succession to illegitimates. Further we do not feel inclined to open it, if we had the power. By so doing the result might be the entire prostration, in process of time, of the value of the great social compact. Let the bastard child succeed to the mother, where she has no legitimate child, the illegitimate to the illegitimate, for such is the Legislature's will; but there we stop. The case has occurred, as provided for in the 5th rule. The next collateral relations in the paternal line to the propositus are entitled to the inheritance alone, because those on the maternal line, though equally near, are excluded by the illegitimacy of Zelia, the mother. In the decision of the case of Flintham v. Holder the Court did not confine themselves to a literal observance of the act, but the case was clearly within its meaning, and to some degree within the words. The decision is confined to the succession of brothers, born of the same mother, and their representatives, and does not extent to other collaterals. That case was correctly decided.